In the

# United States Court of Appeals

### For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 20-2353

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEREMY SCHENCK,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 19-cr-127-jdp — **James D. Peterson**, *Chief Judge*.

_____

SUBMITTED APRIL 1, 2021 — DECIDED JULY 2, 2021

_____

Before MANION, ROVNER, and ST. EVE, *Circuit Judges*.

MANION, *Circuit Judge*. Jeremy Schenck produced child pornography. He moved to suppress the evidence, arguing the search warrant was not supported by probable cause because the underlying affidavit did not identify how the affiant knew a few particular pieces of information. The district judge agreed with the magistrate judge's recommendation and denied suppression. Schenck pleaded guilty to one count of violating 18 U.S.C. § 2251(a), conditioned on reserving his

right to appeal. The district judge sentenced him to 240 months in prison. Schenck appeals the denial of suppression. But we agree with the district judge that there is nothing to criticize in the magistrate judge's report and recommendation. The affidavit, read as a whole with common sense, established a reasonable probability that the search would produce evidence of child pornography.

## I.

**Jeremy "Emily" Schenck:** Defendant-Appellant. Born ▇▇▇▇ 1995. Biological father of ABC.[1] Former partner of Christina Davis.

**Christina Davis:** Biological mother of ABC. Former partner of Schenck.

**ABC:** Daughter of Davis and Schenck. Born in 2016.

**Melissa Schenck:** Jeremy Schenck's mother.

**Detective Paul Bauman:** Madison police detective. Signed the affidavit supporting the warrant.

**Officer Joseph Buccellato:** Madison police officer. Investigated Davis's report.

**Officer Amber Flores:** Madison police officer. Interviewed Melissa Schenck.

**Melissa Garecht:** Social worker. Investigated Davis's report.

**Katelyn Schneibel:** Schenck's friend in Williston, North Dakota. Told Davis that Schenck sent images to her.

---

[1] We changed the child's initials throughout this opinion.

**Detective Alexius Enget:** Williston police detective. Interviewed Schneibel.

## II.

Jeremy Schenck and Christina Davis have a young biological child together: ABC. Schenck took sexually explicit photos of ABC and sent them to his friend Schneibel on the internet.

Schneibel told Davis, who told Melissa Schenck, who told Detective Bauman. Bauman then spoke with Davis directly. At Bauman's arrangement, Detective Enget spoke with Schneibel directly. During that interview, Schneibel described the images she received from Jeremy Schenck. Enget gave an audio recording of her interview of Schneibel to Bauman. Bauman then applied to a Wisconsin state judge for a warrant to search Jeremy Schenck's apartment for child pornography. Bauman wrote and submitted an affidavit explaining why there was probable cause to support the search. This case centers on Bauman's affidavit.

The affidavit contains seven numbered paragraphs describing factual details Bauman learned during his investigation.

Based on this affidavit, the Wisconsin state judge issued a search warrant. Police executed the warrant on February 20, 2019. They seized Schenck's computer and iPhone. They found four pornographic images of ABC when she was about 1.5 to 2 years old.

The federal government charged Schenck with three counts of production of child pornography and one count of distribution. Schenck moved to suppress all evidence discovered during the search. He argued the affidavit lacked

Case: 3:19-cr-00127-jdp Document #: 74-1 Filed: 08/23/21 Page 4 of 10
Case: 20-2353 Document: 00713865354 Filed: 08/23/2021 Pages: 10

4 No. 20-2353

probable cause because it failed to demonstrate ABC was a child, and it failed to demonstrate the images were sexually explicit.

The magistrate judge issued a thorough report recommending denial of the motion. The district judge adopted the report and wrote: "when read as a whole from a commonsense perspective, [the affidavit] establishes a reasonable probability that the search would yield evidence of child pornography."

Schenck pleaded guilty to one count of production of child pornography, conditioned on preserving his right to appeal. The district judge sentenced him to 240 months in prison. Schenck appeals the denial of suppression.

### III.

We review a district judge's denial of a motion to suppress under a dual standard: we review legal conclusions *de novo* but we review findings of fact for clear error. *United States v. Hammond*, 996 F.3d 374, 383 (7th Cir. 2021). We give great deference to the judge issuing the warrant. *United States v. Woodfork*, 999 F.3d 511, 516 (7th Cir. 2021). We uphold a finding of probable cause "so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing … ." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found. Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found … ." *Ornelas v. United States*, 517 U.S. 690, 696

No. 20-2353                                                            5

(1996). Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Probable cause is a flexible, common-sense, totality-of-the-circumstances standard.

Schenck challenges the affidavit. He argues it failed to establish a reasonable basis to think ABC was a child. This is significant because if ABC were an adult at the relevant times, then the photos of her would not be criminal (or at least they would not be child pornography).

Bauman included a 2016 date of birth for ABC in paragraph 2 of his affidavit. This would make her less than 3 years old at the relevant times. But Schenck argues the affidavit's "glaring flaw" is that it never provides a source for its allegations about ABC's age. Schenck argues that paragraph 2, which lists the date of birth of ABC, "relies entirely on the conclusory statement of the affiant," Bauman. Schenck argues Bauman never explains how he knows ABC's birthdate.

It is true that mere conclusory statements will not suffice. *United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir. 1996). And it is true that the affidavit is not overly detailed about how Bauman knows ABC is a child. Bauman lists her date of birth, but does not explicitly and separately cite his source for this particular piece of information.

But considering the totality of the circumstances, and applying common sense, we find it abundantly clear that there were very good reasons for the state judge to think ABC was a child at the relevant times. The magistrate judge and the district judge each performed a superb analysis demolishing Schenck's argument. For example, the magistrate judge noted

that the warrant application showed Schenck had a juvenile case filed against him in 2011. So the oldest he could have been at that time in 2011 was 17. So for ABC to have been an adult in February 2019 when Bauman applied for the search warrant, Schenck would have had to have fathered her when he was a very young child himself:

> For ABC to have been 18 years old in February 2019, Schenck would have had to have fathered her when he was six or seven years old. Common sense and a rudimentary knowledge of human reproductive biology lead to the conclusion that ABC must have been a minor at the time Det. Bauman applied for the challenged warrant.

(R. & R., A-8, p. 8.)

Also, the district judge correctly noted that a fair reading of the affidavit suggests that Bauman learned all the information in paragraph 2 from Buccellato. Paragraph 2 opens by referencing Buccellato and his involvement in this matter. Paragraph 2 explicitly references Buccellato as the source of the report that Garecht said Davis made allegations. And paragraph 2 explicitly references Buccellato as the source of the report of an interview with Davis about the allegations. Moreover, Bauman goes on in the following paragraphs to explain his investigation. Each of those paragraphs contains information Bauman received from a particular source. Paragraph 3 contains information from Davis. Paragraph 4 contains information from Flores, who interviewed Melissa Schenck. Paragraph 5 contains information from a further interview with Davis. Paragraph 6 contains information from Enget. Paragraph 7 contains information from the Wisconsin Circuit Court Access database. So the structure of paragraph 2 itself,

No. 20-2353                                                              7

which mirrors the structure of the other paragraphs, shows that Bauman's immediate source for ABC's date of birth was Buccellato. We have never required an application for a search warrant to have an explicit, separate citation for every piece of information in all circumstances.

But Schenck remains unsatisfied. He argues on appeal that even if Buccellato is the source of ABC's date of birth listed in paragraph 2, there is nothing in the affidavit about how Buccellato knows this information. It seems Schenck did not raise this argument properly below, but it also seems the government does not urge forfeiture. But we need not wade through an analysis of forfeiture and potential forfeiture of forfeiture. Nor need we weigh in on whether a reference to only Buccellato as the source would be enough. It is easier to note that paragraph 2 *does* reflect the ultimate source for ABC's date of birth: Christina Davis, ABC's mother. We agree with the magistrate judge: "Common sense suggests—and it is imminently reasonable to infer—that Davis provided the [birth date of ABC] to Garecht, who passed [that date] to Buccellato, who passed [it to] Bauman, who put [it] into his warrant application." (R. & R., A-8, p. 7.) Schenck does not question how Davis knows her daughter ABC's birthday. Besides, the affidavit need not prove the truth of its every assertion beyond a reasonable doubt. Probable cause does not even require proof by a preponderance of the evidence. *United States v. Jones*, 763 F.3d 777, 795 (7th Cir. 2014).

Schenck also argues the affidavit failed to establish a reasonable basis to think ABC was *his* child. This is significant because the fact of his age and the fact that he is the biological father of ABC are part of the grounds (but not the only grounds) to think ABC was a child. But, again, Schenck's

Case: 3:19-cr-00127-jdp Document #: 74-1 Filed: 08/23/21 Page 8 of 10
Case: 20-2353 Document: 00713865354 Filed: 08/23/2021 Pages: 10

8 No. 20-2353

argument fails. The district judge correctly found, for reasons already discussed regarding ABC's date of birth, that "the affidavit attributes that information to Buccellato, who got it ultimately from Davis, perhaps through Garecht, the social worker."

Schenck also argues the affidavit failed to establish a reasonable basis to think the images were pornographic. This is significant because "mere nudity" is not pornographic in this context. He maintains that the officers had probable cause only to think they would find an image of female genitalia. "But, so what? 'Mere nudity' is not lewd," he argues. (Appellant's Br., p. 21.) He argues nudity is only lewd when it includes an unnatural or unusual focus on the child's genitals.

The search warrant cited section 948.12(1m) of the Wisconsin Statutes, which prohibits possession of a photograph of a child engaged in "sexually explicit conduct." Wis. Stat. § 948.12(1m). Wisconsin defines "sexually explicit conduct" as including "Lewd exhibition of intimate parts." *Id.* § 948.01(7)(e). Before the instant crime, the Supreme Court of Wisconsin explained three concepts generally included in defining "lewd" and "sexually explicit":

> First, the photograph must visibly display the child's genitals or pubic area. Mere nudity is not enough. Second, the child is posed as a sex object. … The photograph is lewd in its "unnatural" or "unusual" focus on the juvenile's genitalia … . Last, the court may remind the jurors that they should use these guidelines to determine the lewdness of a photograph but they may use common sense to distinguish between a pornographic and innocent photograph.

Case: 3:19-cr-00127-jdp Document #: 74-1 Filed: 08/23/21 Page 9 of 10
Case: 20-2353 Document: 00713865354 Filed: 08/23/2021 Pages: 10

No. 20-2353 9

*State v. Petrone*, 468 N.W.2d 676, 688 (Wis. 1991), *overruled in part on other grounds by State v. Greve*, 681 N.W.2d 479, 489 n.7 (Wis. 2004). After the instant crime, Wisconsin codified the definition of "Lewd exhibition of intimate parts" as "the display of less than fully and opaquely covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts." *Id.* § 948.01(1t). Wisconsin defines "Intimate parts" as including the "vagina or pubic mound of a human being." *Id.* § 939.22(19).

Federal law is similar. Schenck pleaded guilty to violating 18 U.S.C. § 2251(a), production of child pornography. That statute prohibits using a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct … ." 18 U.S.C. § 2251(a). The Code defines "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(B)(iii).[2] The Code does not define "lascivious exhibition." We have recognized that "more than nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008). Whether an image is lascivious "is left to the factfinder to resolve, on the facts of each case, applying common sense." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011).

Again, Schenck's argument fails. The affidavit quotes Schneibel saying Schenck sent pictures of female genitalia.

---

[2] This amended version of the definition took effect after the instant crime. But the differences are immaterial here.

Case: 3:19-cr-00127-jdp Document #: 74-1 Filed: 08/23/21 Page 10 of 10
Case: 20-2353 Document: 00713865354 Filed: 08/23/2021 Pages: 10

10 No. 20-2353

The word used is vulgar slang. These are not descriptions of innocent photos containing mere non-lewd nudity. We agree with the district judge that the vulgar word "unquestionably connotes a focus on the genitals … ." We reject as frivolous the argument than an image so labeled would not likely be sexually explicit. And the complete content and context of the affidavit also gave the issuing judge ample grounds to find probable cause that a search would produce evidence of crime. Besides, the affidavit need not prove the search will definitively produce evidence of crime.

Invoking *Ferris Bueller's Day Off*, the magistrate judge compares Schenck to a character who looks askance at Georges Seurat's *A Sunday Afternoon on the Island of La Grande Jatte* hanging in the Art Institute of Chicago. The famous painting employs pointillism. Small dots of color—indecipherable in isolation—add up to an intelligible, stunning, tranquil whole. Schenck tries to criticize a tiny fraction of dots, or the tiny space between a few dots, but he misses the whole picture.

## IV.

Schenck's other arguments do not require further discussion. The district judge did not err in denying suppression. We affirm.